# Krodel's Assigned Estate (No. 1).

*Assignment for creditors—Insolvency—Surcharge of assignee.*

Where an assignee for creditors permits the assignor to remain in possession, continue the business on a salary, and replenish the stock without the consent of creditors, he assumes all the risks of loss, and is rightly surcharged with a deficiency, either in whole or in part, depending upon the degree of neglect under the circumstances.

Argued Nov. 15, 1904.   Appeal, No. 118, Oct. T., 1904, by G. Harry Fager and Edward F. Fager, Assignees, from order of C. P. Lancaster Co., sustaining exceptions to auditor's report in re Assigned Estate of P. A. Krodel and wife.   Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.   Affirmed.

Exceptions to report of William P. Harnish, Esq., auditor. The facts appear by the opinion of the Superior Court.

*Errors assigned* were in sustaining exceptions to auditor's report.

*B. F. Davis*, for appellants.

*W. C. Douglas, Jr.*, and *W. H. Keller*, of *Coyle & Keller*, with them *A. C. Bruner*, for appellees.

OPINION BY ORLADY, J., March 14, 1905:

Peter A. Krodel and wife, being insolvent, executed a general deed of assignment to the appellants, in trust for the benefit of creditors. This trust was accepted the same day by putting the deed of record, though the assignors continued to have practically the same control over the business (which consisted of a women's millinery and furnishing store appraised at $1,500) as they had before making their deed of assignment. The assignees were brothers and near relatives of the assignors and did not have any business experience as shopkeepers. It is not alleged that there was any willful mismanagement or designed fraudulent practices on the part of the appellants, but it is apparent that they substituted the judgment of Mrs. Krodel for their own, and permitted her to control the business which, under the law, they were expected to conduct, or to be personally liable for want of proper management. They delayed filing an account until they were compelled to do so by a citation, and then claimed a credit for a loss of more than one half the appraised value of the stock. After a hearing before an auditor they were held liable for eighty per cent of the appraised value, which the court subsequently increased to the whole of the inventoried value. The facts found by the auditor are not in any manner changed or disturbed by the court, in fact they are not disputed, but the court applied well-established legal principles to the facts so as to increase materially the amount of the surcharge.

The duty of the assignees was clearly fixed by the law, and when they permitted the assignors to continue the business, and replenish the stock without the consent of creditors they assumed all the risks of loss, and were rightly surcharged with the deficiency, either in whole or in part, depending upon the degree of their neglect, under the circumstances. They represented the creditors in the first instance and not the assignors, as they stood at the time of their acceptance of the trust. The appraisement was a fair one and as shown by the testimony in its aggregate was not above its open market value.

During the whole of the eighteen months through which the

business was continued, it was apparent that it was a losing venture as to the creditors, many of whom objected, to the methods followed, and the auditor found as a fact " that the assignees expended $1,131.11 in selling $861.70 worth of goods." It is equally apparent that it was a profitable one to the assignors who were receiving wages as clerks and agents, conducting sales of like articles for their personal advantage, as well as occupying the assigned real estate without the payment of any rent. In addition to this favoritism, the assignors, with the knowledge of their assignees, secured for nominal or trifling considerations an assignment to themselves of a large proportion of the outstanding claims against their estate. Such a procedure violated both the letter and the spirit of our assignment laws. The estate was manifestly insolvent, and while a well-advertised and prompt public sale might not have realized more money it would have relieved the assignees of the charges of negligent management and collusion.

Under all the facts of the case we are not disposed to change the decree made by the court below as the case lacks the exceptional circumstances which will justify assignees for the benefit of creditors in carrying on a failing business without the consent of the creditors.

The decree is affirmed.